*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re SKURSKY/MILLER, Minors.

UNPUBLISHED
February 10, 2022

No. 358065
Hillsdale Circuit Court
Family Division
LC No. 19-000595-NA

Before: BORRELLO, P.J., and M. J. KELLY and REDFORD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court order terminating her parental rights to her minor children. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

Respondent's children were removed from her care in August 2019 because of unsanitary and unsafe home conditions. Fourteen people lived in the five-bedroom home at the time, including respondent, respondent's husband and his brother, and several children in addition to respondent's children. The record reflects that, despite the provision of services aimed at remedying the filthy state of respondent's home, the condition remained deplorable. Inside the home was animal feces, the odor of urine, trash, food, dirty clothes, toys, broken items, and cockroaches. Additionally, the home had an ongoing mouse problem, with mouse droppings on the kitchen shelf and mice eating food out of a bread bag on the stove and chewing the nipples off of baby bottles inside a crib. A caseworker noted that although mice had been observed only a few times, the extensive clutter meant that they were not easily observable. At one point, the home was without electricity for approximately a month because they did not pay the bill even though all four adults in the home were employed. In addition, the children were always dirty and had extensive head lice. After removal, two of the children had tubes placed in their ears to assist with hearing issues that they were having. Another child was suffering from a urinary tract infection that her doctor believed she had had for probably a month or longer.

Also, after removal, respondent's seven-year-old daughter demonstrated "sexual behaviors," including taking off her siblings clothing, attempting to shove things in her vagina while she was in the bathtub, and looking at her buttocks while bent over in front of a mirror. At times, she would attempt to place her fingers in her vagina or her anus. She also smeared feces

-1-

twice while in school, would smear toothpaste on the mirrors, and would break glass cups on purpose. Eventually, she disclosed that, on a number of occasions, her father and her uncle would get into bed with her while they and she were naked. She stated that she touched their penises and that they put their penises on her private parts. Eventually, all six children evaluated by the Children's Trauma Advocacy Center (CTAC) made sexual reports "in some way, shape, or form about what we call hypersexuality." Only the seven-year-old, however, disclosed actual sexual abuse.

Throughout the proceedings, respondent expressed that she did not believe the sexual assault allegations, and, even at the termination hearing, she testified that the allegations were "either getting put into their heads or someone else is just saying it." She believed that the foster agency had made the allegations after they were unable to show domestic violence. She added that she did not believe the allegations because she had not heard them directly from the children. Her therapist testified that respondent "has the tendency to deny and minimize problems." Respondent's caseworker testified that she was concerned that respondent did not believe the children and supported their father for over a year. The caseworker explained that, although respondent had separated from her husband, she did believe that respondent would keep the children from their father if they were returned to her.

Following the termination hearing, respondent's parental rights were terminated under MCL 712A.19b(3)(c), (g), and (j).

## II. DUE PROCESS

Respondent argues that the referee violated her due-process rights when she did not hear formal testimony at the numerous review hearings. Respondent, however, has waived this argument. See *In re Ferranti*, 504 Mich 1, 33; 934 NW2d 610 (2019) (explaining that waiver is an intentional relinquishment of a known right); see also *Mettetal v Hall*, 288 Mich 200, 208; 284 NW 698 (1939) ("Where a witness gives his testimony without being sworn, the adverse party by not objecting thereto waives any objection to it."). At each hearing, the case report was entered into evidence without objection. The lawyers and caseworkers then highlighted pieces of the relevant report on the record. Respondent's lawyer noted aspects of the report that respondent wanted to highlight or that respondent found wanting or inaccurate. Respondent never questioned this method and actively participated in it. Moreover, even when case workers made oral statements relating to the case, there was no objection to their unsworn testimony. Therefore, this issue is waived.

## III. NOTICE REQUIREMENTS

Respondent next argues that the trial court did not comply with the notice requirements of the Indian Child Welfare Act, 25 USC 1901 *et seq*., and the Michigan Indian Family Preservation Act, MCL 712B.1 *et seq* The statutes require that the Department of Health and Human Services (DHHS) notify the children's parent of the proceeding, see 25 USC 1912(a) and MCL 712B.9(1). Here, the children's father was given notice of the proceedings; indeed, he was in attendance at every hearing. The record reflects that the children's father was provided with the necessary forms to complete in order for the DHHS to investigate the children's possible Native American heritage. The referee also represented on the record that an investigation was conducted and that the children

were found not to be Native American. Accordingly, respondent has failed to demonstrate that the DHHS or the referee failed to comply with their statutory duties.

## IV. RELATIVE PLACEMENT

Lastly, respondent argues that the DHHS and the referee erred when they did not properly consider relative placement. MCL 722.954a(5) provides as follows:

> *Before determining placement of a child in its care*, a supervising agency shall give special consideration and preference to a child's relative or relatives who are willing to care for the child, are fit to do so, and would meet the child's developmental, emotional, and physical needs. The supervising agency's placement decision shall be made in the best interests of the child. [Emphasis added.]

In this case, before it placed the children, the DHHS evaluated the children's paternal grandmother for placement and found her unfit for placement. Subsequently, although the children's maternal grandfather and aunt came forward as potential placements, they did not do so until the children had been in care for considerable time and after a termination petition had been filed. The caseworker reported that these relatives were rejected as appropriate placements. The DHHS determined that, after that date, seeking new placement was not in the children's best interests. The caseworker represented that the DHHS was concerned that these relatives would not keep the children away from their parents. Additionally, there were concerns that respondent's relatives had only come forward after the children had been in placement for over a year. Thus, the record reflects that the DHHS continued efforts to seek relative placement until the children's goal was changed to adoption.

Moreover, respondent's reliance on *In re Mason*, 486 Mich 142; 782 NW2d 748 (2010) is misplaced. In that case, the trial court erred because it failed to consider that the children's existing relative placement weighed against termination. *Id*. at 163-164. The respondent-father in *Mason* had arranged for relative placement at the beginning of that case. *Id*. In this case, the children were not placed with relatives, and relatives did not come forward until after the termination petition was filed. Accordingly, *Mason* does not mandate reversal in this case.

Affirmed.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ James Robert Redford

-3-